UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| GE COMMERCIAL FINANCE BUSINESS PROPERTY CORPORATION fka GENERAL ELECTRIC CAPITAL BUSINESS ASSET FUNDING CORPORATION, a Delaware Corporation,<br><br>Plaintiff,<br><br>v.<br><br>MICHAEL W. EVANS, individually and his marital community, and WILLIAM A. LONG, individually and his marital community,<br><br>Defendants. | No. C05-104<br><br>ORDER |

This matter comes before the Court on Plaintiff's Motion for Summary Judgment, docket no. 34.  The Court has considered the briefs in support of and in opposition to the motion and GRANTS the Plaintiff's Motion for Summary Judgment, docket no. 34.

**BACKGROUND**

On February 18, 2000, Gold Coast Restaurants ("Gold Coast") and GE Commercial Finance entered into a master loan agreement. Johnson Decl., doc. no 35, Ex. A.  A week later, Gold Coast made and delivered to GE Commercial Finance a promissory note in the original principal amount of $6,500,000.  Id., Ex. B.  Defendants Evans and Long executed

ORDER   1–

1  personal guaranties for all obligations owed by Gold Coast to GE Commercial Finance.
2  Evans Decl., docket no. 43, at ¶¶ 3, 5; Long Decl. Docket no. 44, at ¶¶ 3, 5.  Mr. Evans was
3  the Chief Executive Officer of Gold Coast Restaurants and owned 15% of Gold Coast when
4  the loan was secured.  Id. at ¶ 2.  Mr. Long was the Chief Financial Officer of Gold Coast
5  and owned .17% of Gold Coast when the loan was secured.  Long Decl., docket no. 44, at 2.
6  It is undisputed that Gold Coast is in default on the loan to Plaintiff.  Johnson Decl., docket
7  no. 35, ¶ 3.  However Gold Coast has filed for bankruptcy and the Plaintiff is not seeking
8  any relief against it.

9  The Defendants assert that before they signed the personal guaranties, they received a
10 message from GE that the guaranties were "routinely" requested and would "burn-off"
11 before the loan wass repaid.  Evans Decl., docket no. 43, at ¶ 5; Long Decl., docket no 44, at
12 ¶ 5.  When Mr. Weichmann, of First Tennessee Securities Corporation, presented the terms
13 of the GE loan to the Defendants, they asked him why GE would want personal guaranties
14 from them when their net worth was substantially less than the loan amount.  Id.  Long Decl.,
15 docket no 44, at ¶ 5; Evans Decl., docket no. 43, at ¶ 5.  Mr. Weichmann presented this
16 question to GE.  Weichmann Decl., docket no 45, at ¶ 3.  In response to his inquiry, an
17 employee of GE, Mr. Huffman, told Mr. Weichmann that the guaranties were "routinely"
18 requested and would "burn-off quickly as the loan is paid down but before the loan is fully
19 paid."  Id.

20 **DISCUSSION**

21 Summary judgment shall be granted if the pleadings, depositions, and admissions on
22 file show that there is no genuine issue as to any material fact and that the moving party is
23 entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).

24 Defendants argue that they do not owe GE the unpaid amount on the loan to Gold
25 Coast because, before they signed the personal guaranties, they received a message from Mr.
26 Huffman of GE that the personal guaranties were "routinely" requested and would "burn-off"

ORDER  2−

before the loan was repaid. Defs.' Resp., docket no. 42, at 4-6. Defendants argue that the Plaintiff is not entitled to summary judgment because there are genuine issues of material fact as to whether: (1) GE is estopped from enforcing the guaranties; and (2) GE's misrepresentation induced the Defendants' assent. Id.

Defendants' arguments fail. First, in order to prove equitable estoppel, the Defendants must prove that their reliance on the Plaintiff's assertions was reasonable. Robinson v. City of Seattle, 119 Wash. 2d 34, 81 (1992). It was not reasonable for the Defendants to rely on Mr. Huffman's statement as a basis for believing that the personal guaranties would not be enforced. The Defendants learned about the statements second-hand and in a casual manner. In addition, the Defendants signed letters indicating that they understood that signing the guaranties made them liable for the debts. See Supp. Johnson Decl., docket no. 49, Exs. A, B.

Second, to establish that the personal guaranties should not be enforced due to misrepresentation, the Defendants must demonstrate that: (1) the Plaintiff made a material misrepresentation; (2) the Defendants relied on the misrepresentation; and (3) the Defendants' reliance was justified. Skagit State Bank v. Rasmussen, 43 Wash. App. 178, 182-83 (1986). The Defendants' reliance on Huffman's statement was not justified. It is not reasonable for businessmen to rely on vague, oral guaranties to contradict the terms of a formal contract. After the Defendants learned of Mr. Huffman's statement, they signed formal letters to indicate that they understood their liability under the personal guaranties. Supp. Johnson Decl., docket no. 49, Exs. A, B. No reasonable jury could find that misrepresentation is a reason to invalidate these personal guaranties.

The Court finds the Defendants liable to the Plaintiff for $3,695,488.33 in principal, $280,111.90 in interest, and $30,480.64 in late charges for a total of $4,006,080.87. See Johnson Decl., docket no. 35, ¶ 6. The Court GRANTS the Plaintiffs' request for costs and attorneys' fees. The Court DIRECTS the Plaintiffs to file evidence of their reasonable

ORDER  3–

costs and attorneys' fees within fifteen (15) days of this Order.  The Defendants shall have ten (10) days after the filing of the Plaintiff's evidence to respond to the reasonableness of the requested costs and fees.

Interest shall accrue on the judgment at the rate specified by 28 U.S.C. § 1961(a).

IT IS SO ORDERED.

DATED this 31st day of August, 2005.

/s/ Thomas S. Zilly
Thomas S. Zilly
United States District Judge

ORDER   4–